# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

| | | |
|---|---|---|
| DONALD J. ARNWINE, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:06-CV-356 |
| | ) | (Phillips) |
| LOCKHEED MARTIN ENERGY SYSTEMS, INC., | ) | |
|     Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Donald J. Arnwine has sued his former employer, Lockheed Martin Energy Systems, Inc., alleging he was wrongfully discharged because of his race and that during his employment he was subjected to unequal terms and conditions of employment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et. seq.,* and 42 U.S.C. § 1981. Defendant Lockheed Martin Energy Systems, Inc., has moved for summary judgment asserting that there are no genuine issues as to material facts, and that Lockheed Martin is entitled to judgment as a matter of law on all of plaintiff's claims. Because plaintiff has failed to make a *prima facie* showing that any adverse action was racially motivated, and because the defendant has articulated a legitimate, nondiscriminatory reason for its employment decision and plaintiff has not shown the stated reason to be pretext, defendant Lockheed Martin's motion for summary judgment will be granted, and this action will be dismissed.

**Factual Background**

This case involves the Y-12 Plant in Oak Ridge, Tennessee, which is one of four DOE facilities in Oak Ridge. These four DOE facilities house classified materials pertaining to national security, secret scientific research, and the development of nuclear weapons. Pursuant to its contract with DOE, Lockheed Martin was responsible for providing security (guard services) at Y-12. The Y-12 Plant maintains the nation's stockpile of weapons-grade uranium. Improper access into any one of these Oak Ridge facilities threatens national security, could benefit foreign governments or terrorist groups, and jeopardizes the safety of the nation's military and civilian populations. Thus, the security of the Y-12 Plant is vital to national security.

The work performed by security guards at Y-12 is subject to extensive DOE regulations that apply to protective force personnel at government-owned facilities like Y-12. *See* 10 C.F.R. Part 1046. These regulations require security guards to meet certain physical fitness and other requirements, at specified intervals, to maintain their status. DOE regulation 10 C.F.R. § 1046.14 expressly requires all protective force personnel to have a "current access authorization for the highest level of classified matter to which they potentially have access [security clearance]." Lockheed Martin required its security guards to obtain and maintain a Q-Clearance as a condition of their employment. Arnwine understood he had to have a Q-clearance in order to work as a guard at Y-12.

Plaintiff Arnwine, an African-American, was employed by Lockheed Martin in the protective forces at Y-12 from 1984 until 1998, when Lockheed Martin terminated his employment because his security clearance was revoked by DOE. From 1984 to 1988, Arnwine worked as a security inspector, a bargaining unit position covered by the Collective Bargaining Agreement between Lockheed Martin and the Guards Union. In May 1988, Arnwine became a Plant Lieutenant, a nonsupervisory position outside the bargaining unit, which he continued to hold until the revocation of his clearance and the resulting termination of his employment in March 1998.

DOE has exclusive authority to grant, suspend and terminate security clearances. Lockheed Martin has no role in decisions relating to the granting, suspending or terminating/revoking security clearances. Arnwine maintained a Q-Clearance from 1984 until 1998. DOE suspended Arnwine's security clearance in October 1996 because of his "pattern of financial irresponsibility." In its letter informing Lockheed Martin of the suspension, DOE told Lockheed Martin that it should reassign Arnwine to "activities not involving access to classified information . . . until a final decision as to his eligibility [for a security clearance] has been made."

Under the federal regulations, DOE may either suspend or terminate an employee's security clearance. Under the practice followed by Lockheed Martin at Y-12, there is an important difference between the <u>termination</u> of a clearance and the <u>suspension</u> of a clearance. If an individual's clearance is <u>suspended</u>, Lockheed Martin continues to

employ the individual but assigns the individual to a position not requiring a clearance pending DOE's decision whether to reinstate or to terminate the individual's clearance. If the individual's <u>suspended</u> clearance is later reinstated, the individual's employment is continued. But if the individual's clearance is <u>terminated or revoked</u>, the individual's employment is terminated.

When DOE suspended Arnwine's clearance, Lockheed Martin assigned Arnwine to a job at the company's Central Training Facility, not involving access to classified information, pending DOE's decision whether to reinstate or to revoke/terminate Arnwine's clearance. This assignment, which was made in accordance with DOE's instruction and Lockheed Martin's policy, did not affect Arnwine's salary. Arnwine remained at the Central Training Facility until his clearance was revoked, and his employment terminated, in March 1998.

Arnwine requested a hearing following the suspension of his security clearance. The hearing officer issued a decision concluding that Arnwine's "access authorization [security clearance] should not be restored." Pursuant to 10 C.F.R. § 710.28(b), Arnwine appealed the hearing officer's adverse decision, but his appeal was not successful. By letter of January 29, 1998, the Director of DOE's Office of Security Affairs informed Arnwine that a final decision had been made to revoke his clearance, and notified Lockheed Martin of the revocation on March 4, 1998. Lockheed Martin terminated Arnwine on March 5, 1998 because DOE had revoked his clearance. It was Lockheed

Martin's policy and practice at Y-12 to terminate the employment of any employee whose security clearance had been revoked or terminated by DOE. The termination of the employee is not delayed pending any appeal the employee may elect to take from DOE's action. The policy and practice of forthwith terminating an employee whose clearance has been terminated was also consistently followed by the previous government contractors at Y-12: Martin Marietta Energy Systems and Union Carbide Corporation. From August 1989 to April 1999, fifty-four employees at the Y-12 Plant had their security clearance terminated and in each instance, Lockheed Martin and its predecessors forthwith terminated the employee upon being notified of the security clearance termination by DOE. Lockheed Martin did not re-employ any Y-12 employee who had been terminated due to the termination/revocation of a security clearance.

At the time of his termination, Lockheed Martin told Arnwine that he was being terminated because of the revocation of his security clearance. Arnwine did not file any charge with the EEOC or the Tennessee Human Rights Commission which asserted that his termination violated Title VII or the Tennessee Human Rights Act.

Arnwine previously filed an EEOC charge against Lockheed Martin in 1995 alleging denial of a promotion in August 1995. Arnwine withdrew this charge before the EEOC issued a determination.

Lockheed Martin has moved for summary judgment asserting that (1) the undisputed evidence fails to support Arnwine's claim for wrongful termination, (2) Arnwine's failure to promote claim is time barred, (3) Arnwine's Title VII claims are barred for failure to timely file a charge with the EEOC, and (4) his § 1981 claims are barred by the statute of limitations. Therefore, Lockheed Martin asserts that it is entitled to judgment as a matter of law on all plaintiff's claims.

Plaintiff Arnwine has responded in opposition, stating that the evidence in this case demonstrates that he was terminated on account of his race while white employees were treated more favorably, and that he was terminated in retaliation for making a complaint about not being promoted.

**Summary Judgment Standard**

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling on a motion for summary judgment, the court views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank,* 916 F.2d 337, 342 (6th Cir. 1990). A mere scintilla of evidence

is insufficient; there must be evidence on which the jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

## **Analysis**

In his response to Lockheed Martin's motion for summary judgment, Arnwine states that he withdraws his claims based upon a hostile work environment, and for discriminatory failure to promote. Arnwine's remaining discrimination and retaliation claims against Lockheed Martin are based on the theory of disparate treatment and, more specifically, on the claim that "white security guards whose security clearances were revoked were not terminated."

### Arnwine's Termination Claim

Lockheed Martin seeks summary judgment as to Arnwine's termination claim on the ground that it fails to state a claim on which relief may be granted. DOE regulation, 10 C.F.R. § 1046.14, provides that "protective force personnel shall possess current access authorization (i.e., security clearance)." Lockheed Martin's contract with DOE required it to provide "fully qualified, cleared personnel" for security guard positions. All security guards at Y-12 had to obtain and maintain a security clearance as a condition of their employment. Lockheed Martin terminated the employment of any security guard whose

security clearance was revoked or terminated by DOE.  Lockheed Martin asserts it terminated Arnwine's employment solely because DOE terminated his security clearance, and that it is not unlawful for an employer to terminate such an employee because that employee's security clearance has been terminated.

Arnwine has alleged that his termination was not justified and in fact was motivated by racial discrimination.  An employee may prove discrimination in two ways.  The first is by putting forward direct evidence that the defendant had a discriminatory motive in carrying out its employment decision.  *See Robinson v. Runyon,* 149 F.3d 507, 512-14 (6th Cir. 1998).  Direct evidence of discrimination is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions."  *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.,* 176 F.3d 921, 926 (6th Cir. 1999).  Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus, but does allow the factfinder to draw a reasonable inference that discrimination occurred.  *Kline,* 128 F.3d at 348.

Under the circumstantial or indirect evidence method, the employee must first establish a *prima facie* case of discrimination.  *Monette v. Electronic Data Sys., Corp.,* 90 F.3d 1173, 1186 (6th Cir. 1996). In order to establish a *prima facie* case for discriminatory termination, Arnwine must show that (1) he was a member of a protected class, (2) he was qualified for the position and did it satisfactorily, (3) despite his qualifications and performance, he was discharged, and (4) he was replaced by a person outside the

protected class or was treated less favorably than a similarly situated individual outside his protected class.  *Noble v. Brinker International, Inc.,* 391 F.3d 715, 728 (6th Cir. 2004).

Once the employee successfully makes out a *prima facie* case, a mandatory presumption of discrimination is created and the burden shifts to the employer to proffer a non-discriminatory reason for discharging the employee.  *Monette,* 90 F.3d at 1186.  If the employer is able to sustain its burden, then the mandatory presumption evaporates into a permissive inference, and the burden shifts back to the employee to show that the employer's proffered reason for discharge was actually a pretext intended to hide unlawful discrimination.  *Id.*  While the burden of production shifts back and forth between the parties under the *McDonnell Douglas* framework, the ultimate burden of proving that the employer discriminated against the employee on account of his race remains at all times with the employee.  *Id.*

An employee can show pretext by offering evidence that the employer's proffered reason had no basis in fact, did not actually motivate its decision, or was never used in the past to discharge an employee.  *Kocsis v. Multi-Care Management, Inc.,* 97 F.3d 876, 883 (6th Cir. 1996).  In challenging an employer's action, an employee "must demonstrate that the employer's reasons are not true."  *Smith v. Chrysler Corp.,* 155 F.3d 799, 806 (6th Cir. 1998).

Arnwine, as an African-American, belongs to a protected class, and with respect to his termination, he suffered an adverse employment action.  However, he cannot establish that he was qualified for his position, or that he was treated less favorably than a similarly situated individual outside the protected class.   Arnwine has not shown that he was qualified for the security officer position because he failed to meet a fundamental, objective prerequisite.  When he was hired by Lockheed Martin, he was told that he must maintain a security clearance in accordance with DOE regulations.  10 C.F.R. § 1046.14  The Sixth Circuit and other federal courts have uniformly held that the denial of a security clearance renders the plaintiff unqualified for the job within the meaning of the *prima facie* case.  See *Strong v. Orkand Corp.,* 83 Fed.Appx. 751, 753 (6th Cir. 2003); *Tenenbaum v. Caldera,* 45 Fed.Appx. 416 (6th cir. 2002); *Ryan v. Reno,* 168 F.3d 520 (D.C.Cir. 1999); *Becerra v. Dalton,* 94 F.3d 145 (4th Cir. 1996); *Perez v. FBI,* 71 F.3d 513 (5th Cir. 1995); *Brazil v. Dept. of Navy,* 66 F.3d 193 (9th Cir. 1995); *Bowers v. Lockheed Martin Energy Sys., Inc.,* 3:95-cv-203 (E.D.Tenn. 1995); *Guillot v. Garrett*, 970 F.2d 1320 (4th Cir. 1992); *Lovelace v. Stone,* 814 F.Supp. 558 (E.D.Ky. 1992).

Arnwine argues that holding a security clearance, in and of itself, does not render a person either qualified or unqualified for a security officer position at Y-12. Arnwine points to Lockheed Martin's policy of reassigning employees who temporarily lost clearance as evidence that maintenance of a security clearance at all times is not a requirement of the job.   Arnwine also points out that new hires worked at Y-12 without a security clearance while awaiting their clearances from DOE.

The record does not support Arnwine's contention that he was treated differently than similarly situated individuals not in his protected class. To show that he was treated differently from similarly situated white peers for the same or similar conduct, Arnwine must show that "all relevant aspects" of his employment situation were "nearly identical" to those of the allegedly similarly situated white employees. *Humenny v. Genex Corp.,* 390 F.3d 901, 906 (6th Cir. 2004) (*quoting Ensley-Gaines v. Runyon,* 100 F.3d 1220, 1224 (6th Cir. 1996). To be deemed "similarly situated," the individuals with whom Arnwine compares himself "must have dealt with the same supervisor, been subject to the same standards, and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id., quoting Gray v. Tobisha Am. Consumer Products, Inc.,* 263 F.3d 595, 599 (6th Cir. 2001); *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir. 1992). It is Arnwine's burden to establish that the other employees' acts were of comparable seriousness to his own infraction. *See Warfield v. Lebanon Correctional Inst.,* 181 F. 3d 723, 730 (6th Cir. 1999).

Arnwine contends that similarly situated white employees were treated more favorably. G.D. Arthur is one such employee. Arnwine states that Arthur remained employed at Y-12 for nine months after losing his security clearance due to two DUI arrests, and that when terminated, he was given 14 weeks severance pay. No such benefit was given to Arnwine upon his termination. Additionally, white employee Calvin Key lost his security clearance for more than a year due to DUI charges. Unlike Arnwine, he was not terminated.

The record shows that Arthur and Arnwine are not similarly situated in all relevant respects.[1] As opposed to Arnwine, the record shows that Arthur's employment was terminated after he failed to meet DOE's physical fitness requirements, not because he lost his clearance. As to the payment of 14 weeks severance pay to Arthur, under the Collective Bargaining Agreement (CBA) between the union and Lockheed Martin (which contract was assumed by WSI-OR), the contractor provided for "layoff allowance pay" when an employee was terminated on account of medical reasons. The payment of severance benefits to Arthur was required by the CBA. Arnwine was not terminated for medical reasons and thus, not entitled to the same severance benefits.

Nor are Calvin Key and Arnwine similarly situated. DOE suspended Key's clearance in 1990. Upon being notified of the suspension, Lockheed Martin temporarily reassigned him to a job that did not require a clearance, pending DOE's determination whether to revoke or reinstate his clearance. In August 1992, DOE reinstated Key's clearance, at which time Lockheed Martin reassigned him to his former position. When DOE suspended Arnwine's clearance in 1996, Lockheed Martin followed the same procedure: It temporarily assigned Arnwine to a job that did not require a clearance, just as it had done in Key's case. In Arnwine's case, however, DOE did not reinstate his

---

[1] The record shows that Arthur was terminated by WSI-OR, and not Lockheed Martin. WSI-OR took over the DOE contract for the Y-12 facility in 2000. Arnwine seems to imply that Lockheed Martin and WSI-OR are one and the same. Lockheed Martin and WSI-OR are, in fact, separate entities.

clearance. Instead, by letter dated March 4, 1998, DOE notified Lockheed Martin that it had revoked Arnwine's clearance. DOE never revoked Key's clearance.

Arnwine also alleges that R.D. McAmis was kept on the payroll for eight months after the revocation of his DOE clearance prior to termination. The record shows that McAmis was a chemical operator at Y-12 whose clearance was suspended in March 1991. At that point, Lockheed Martin assigned McAmis to uncleared work pending DOE's decision on the reinstatement or revocation of his clearance. In May 1992 McAmis went on short-term disability due to a knee injury. He never returned to work. On July 9, 1992, DOE notified Lockheed Martin that McAmis' clearance had been revoked; however, because he was on disability leave, Lockheed Martin delayed his termination until he was cleared to return to work. Lockheed Martin did send McAmis a letter informing him that he would not be eligible to resume employment at Y-12 in the future. McAmis remained off work on disability pay until the end of March 1993, when it was determined that he was able to perform available work. On April 7, 1993, Lockheed Martin terminated McAmis because of the revocation of his clearance.

In every instance the employee Arnwine cites in support of his contentions was either a newly hired employee temporarily working in a job not requiring a clearance while awaiting the initial grant of a clearance or an employee whose clearance had been suspended, but later reinstated. None are similarly situated with Arnwine, whose clearance was revoked. He cites no employee whom Lockheed Martin retained after his/her

clearance was revoked. The evidence plainly establishes that Lockheed Martin did not treat these employees differently or better than it treated Arnwine. He has presented no evidence to show that he was treated differently or less favorably than any other similarly situated Y-12 employee. Because Arnwine has presented no evidence to prove he was treated differently on the basis of his race, he cannot establish the fourth element of a *prima facie* case for racial discrimination in his termination.

Even if Arnwine could establish a *prima facie* case, his termination claim would still merit dismissal because he cannot establish that Lockheed Martin's stated reason for his termination, the revocation of his security clearance, is a pretext for discrimination. Lockheed Martin had no role in the termination of Arnwine's clearance, so Lockheed Martin could not have discriminated against him by relying on DOE's decision. Title VII, 42 U.S.C. § 2000e-2(g) provides that it is not an "unlawful employment practice" under Title VII for an employer to terminate an employee who fails to maintain a security clearance when a clearance is a required condition of his employment.

Unless Congress has expressly authorized judicial review, this court has no jurisdiction to review any clearance decision no matter what the underlying cause of action. In *Tenenbaum v. Caldera,* 45 Fed.Appx. 416 (6th Cir. 2002), the Sixth Circuit explained, "the merits of an executive branch decision to deny security clearance generally are not reviewable." *Id.* at 417-18; *See also, Dept. Of the Navy v. Egan,* 484 U.S. 518 (1988)*;*

*Bennett v. Chertoff,* 425 F.3d 999, 1003 (D.C.Cir. 2005); *Guillot v. Garrett,* 970 F.2d 1320, 1325 (4th Cir. 1992).

In summary, Arnwine cannot present a *prima facie* case of race discrimination within the meaning of Title VII. Lockheed Martin's affidavits and exhibits establish that he was not qualified for the position from which he was terminated. Arnwine was hired contingent upon his ability to obtain and <u>maintain</u> a security clearance from DOE, and was specifically advised that the maintenance of a favorable security clearance was a requirement of employment with Lockheed Martin. The termination of Arnwine's security clearance by DOE rendered him unqualified for the job. Although Arnwine would have been reinstated if he reversed the clearance suspension, his appeal to DOE was unsuccessful, and his clearance was revoked. Arnwine has also failed to establish that the individuals he named as comparators were, in fact, treated differently in the manner of action taken. Arnwine has also failed to establish by affidavits or evidence of any kind that for the same or similar conduct, he was treated differently than similarly-situated non-minority employees. Lockheed Martin has articulated a legitimate, nondiscriminatory reason for its decision to terminate Arnwine's employment, and Arnwine has completely failed to present any evidence discrediting that explanation. Thus, summary judgment will be granted to Lockheed Martin on Arnwine's claim for wrongful termination on the basis of racial discrimination.

## Arnwine's Retaliation Claim

Arnwine also alleges that Lockheed Martin terminated him in retaliation for making a complaint about not being promoted. In support of his allegation, Arnwine states that he applied for promotions in the late 1980s and early 1990s; that his last application for a promotion was in August 1995; that he filed a race/age discrimination charge against Lockheed Martin in October 1995 complaining about not being promoted for the SRT Captain position in August 1995; and that he voluntarily withdrew the charge before the EEOC made a determination.

To establish a *prima facie* case of retaliatory discharge, Arnwine must show: (1) that he engaged in protected activity; (2) that Lockheed Martin knew of this exercise of his protected rights; (3) that Lockheed Martin consequently took an employment action adverse to him; and (4) that there was a causal connection between the protected activity and the adverse employment action. *EEOC v. Avery Dennison Corp.,* 104 F.3d 858, 860 (6th Cir. 1997). If Arnwine establishes a *prima facie* case of retaliation, Lockheed Martin may rebut the presumption of retaliation by asserting a legitimate, nondiscriminatory reason for its actions. *Morris v. Oldham Co. Fiscal Court,* 201 F.3d 784, 793 (6th Cir. 2000). Arnwine must then show by a preponderance of the evidence that Lockheed Martin's proffered reason for the employment action is pretextual. *Id.* Arnwine must produce sufficient evidence from which the jury could "reasonably reject" Lockheed Martin's explanation and infer that Lockheed Martin "intentionally discriminated" against him. *Woythal v. Tex-Tenn Corp.,* 112 F.3d 243, 246-47 (6th Cir. 1997). Arnwine must submit

evidence demonstrating that Lockheed Martin did not "honestly believe" in the proffered nondiscriminatory reason for its adverse employment action. *Braithwaite v. Timken Co.,* 258 F.3d 488, 494 (6th Cir. 2001). To inquire into Lockheed Martin's "honest belief," the court looks to whether the employer can establish "reasonable reliance" on the particularized facts that were before the employer when the decision was made. *Smith v. Chrysler,* 155 F.3d 799, 807 (6th Cir. 1998). The key inquiry is "whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Balmer v. HCA, Inc.,* 423 F.3d 606, 614 (6th Cir. 2005).

Arnwine asserts that he engaged in protected activity in filing his charge of discrimination in 1995. This charge continued to be processed until he withdrew the charge in March 1997, one year before his termination. Thus, he asserts he has shown temporal proximity between his charge of discrimination and his termination.

For purposes of summary judgment, the court will assume that Arnwine engaged in protected activity under Title VII. However, Arnwine must show more than temporal proximity to establish a *prima facie* case of retaliation. The law is clear that temporal proximity, standing alone, is insufficient to establish a causal connection for a retaliation claim. *Tuttle v. Metropolitan Gov't of Nashville,* 747 F.3d 307, 321 (6th Cir. 2007). Arnwine acknowledges that his EEOC charge was filed in 1995. While the filing of a charge is protected activity, the filing of a charge in 1995 is too remote from a 1998 termination to establish any hint of a causal connection. *See Candelaria v. EG&G Energy Measurements,*

*Inc.,* 33 F.3d 1259, 1261 (10th Cir. 1994) (three years too long); *Oliver v. Digital Equipment Corp.,* 846 F.2d 103, 1100-11 (1st Cir. 1988) (two and a half years too long); *Samuelson v. Durkee/French/Airwick,* 976 F.2d 1111, 1115 (7th Cir. 1992) ("the three year time lapse discounts the causal connection between the two events.").

Arnwine's retaliation claim fails for the same reason his discrimination claim fails. He has not come forward with any evidence to dispute Lockheed Martin's legitimate, nondiscriminatory reason for his termination. It is undisputed that DOE had the exclusive authority to grant, suspend and revoke/terminate the security clearance of employees of DOE contractors like Lockheed Martin. Lockheed Martin had no involvement in DOE's decisions relating to security clearances. There is no evidence in the record of a causal connection between Arnwine's complaint about not being promoted, and the revocation of his security clearance by DOE, and the resulting termination of his employment.

### Arnwine's Other Claims

In his Third Amended Complaint, Arnwine states that "he was deprived of an opportunity to work in an integrated environment in which African-American employees hold management positions." However, in his deposition Arnwine admitted that during his employment with Lockheed Martin, he was supervised by a number of African-American supervisors in the protective force, including Gaylord Gibson, James Clark, Jay Fain, Kenneth Jenkins, Baffin Harper and Tom Foust. Moreover, 20% of the bargaining unit employees in Lockheed Martin's protective force were African-Americans. As Arnwine has

failed to provide any evidence that he was deprived of an opportunity to work in an integrated environment, summary judgment will be granted to Lockheed Martin on this claim.

Arnwine also claims that during his employment, he was subjected to unequal terms and conditions of employment, including racially disparate supervision and discipline. However, in his deposition, Arnwine testified that he had no problems of a racial nature with any of the Lockheed Martin managers and supervisors. Arnwine further testified that his work relationship with Chief Steve Gibbs was "fine"; that during his employment with Lockheed Martin he had no work-related or personal problems with Gibbs; and that he had never heard Gibbs say anything offensive or racially insensitive. Arnwine was also asked if any other members of Lockheed Martin's management had said anything that was racially insensitive or demonstrated discrimination. His answer was "Not . . . not that I recall. No, sir." Arnwine did relate a problem with Joe Mincey, a Lockheed Martin Shift Commander, but he described his problems with Mincey as a "personality conflict." The problems that Arnwine had with Mincey occurred in 1988 and 1990. Arnwine testified to no further problems with Mincey after 1990.

Arnwine was disciplined on three occasions in the late 1980s and early 1990s, but did not file a claim with the EEOC regarding these disciplinary actions. Because Tennessee is a deferral state within the meaning of Title VII, Arnwine had 300 days from the date of the alleged unlawful act to file a timely EEOC charge. *See Mohasco v. Silver,*

447 U.S. 807 (1980) (A plaintiff must file a timely charge of discrimination with the EEOC before filing a complaint based on Title VII in federal court.)  Since Arnwine filed no charge regarding these incidents, these allegations are time-barred.  Thus, summary judgment will be granted to Lockheed Martin on Arnwine's claims of disparate supervision and discipline.

## **Conclusion**

For the reasons stated above, the court finds that defendant Lockheed Martin Energy Systems, Inc. Is entitled to  judgment as a matter of law on Arnwine's claims of discrimination and retaliation under Title VII and 42 U.S.C. § 1981.  Accordingly, defendant's motion for summary judgment [Doc. 48] will be granted,  and this action will be dismissed.

**ENTER:**

    s/ Thomas W. Phillips
United States District Judge